| STATE OF NORTH CAROLINA<br>WAKE COUNTY | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
|---|---|

CIVIL ACTION NO.: 23-CVS

DUKE UNIVERSITY,

     Plaintiff,

     v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA., and IRONSHORE
SPECIALTY INSURANCE
COMPANY,

     Defendants.

**<u>COMPLAINT</u>**

***JURY TRIAL DEMANDED***

Plaintiff Duke University ("Duke") files this Complaint against Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and Ironshore Specialty Insurance Company ("Ironshore") (together, "the Insurers"), and in support thereof, avers as follows:

## <u>NATURE OF THE ACTION</u>

1.     National Union sold Duke a primary-layer liability insurance policy that contains an express grant of coverage for "Antitrust Claims," including claims alleging price fixing and violations of the Sherman Antitrust Act. After an antitrust lawsuit was filed in January 2022 against Duke and other universities alleging such claims, Duke timely reported the lawsuit to National Union and its other directors and officers ("D&O") liability insurers under the applicable D&O coverage tower. *See Henry, et al. v. Brown University, et al.*, No. 22-cv-00125 (N.D. Ill.), n/k/a *Carbone, et al. v. Brown University, et al.*, No. 22-cv-00125 (N.D. Ill.) (the "Antitrust Action"). National Union acknowledged in writing that the Antitrust Action complaint triggered coverage, and over the next year, appeared to collaborate with Duke on the

defense and litigation of the action.

2.      In late August 2023, however, National Union reversed course, asserting that any potential costs that Duke may incur in a settlement of the Antitrust Action would not be covered. Specifically, National Union asserted that any such costs would (despite the underlying complaint's prayer for *damages* and the lack of any adjudication against Duke or admission of wrongdoing) supposedly constitute disgorgement or restitution "uninsurable" as a matter of "public policy."  National Union's position is without merit and, among other flaws, cannot be squared with its policy's express antitrust coverage grant, the absence of any policy exclusions for restitution or disgorgement, the underlying complaint's repeated request for antitrust *damages*, the fact that a lump-sum settlement payment with no admission of wrongdoing is not restitution or disgorgement, the absence of any applicable law rendering a settlement of the Antitrust Action "uninsurable," and the public policy favoring enforcement of contracts.

3.      As noted, National Union's "uninsurability" position was—aside from being legally and textually baseless—belatedly raised as a complete defense to coverage of any settlement and, moreover, reflected a departure from National Union's prior course of conduct. Thus, National Union, among other things, failed to promptly provide a reasonable explanation for what culminated in a denial of coverage, failed to act reasonably promptly upon claims communications, and failed to implement reasonable standards for the prompt investigation of claims—thereby violating statutory proscriptions on unfair claim settlement practices.

4.      On September 28, 2023, Duke reached an agreement in principle to settle the Antitrust Action, which settlement would require Duke to make a payment in excess of the upper limits of National Union's policy.  Yet National Union has refused to contribute toward that settlement based on its above-stated "uninsurability" or "public policy" theory.  And while

National Union has agreed to pay defense costs related to the Antitrust Action, it has failed to timely process payment of those invoices and has unilaterally cut without adequate explanation or justification substantial amounts and categories of defense cost invoices from reimbursement (including categories it had previously and expressly committed to cover)—in further violation of its contractual and statutory obligations.

5.     Meanwhile, Ironshore, one of Duke's excess insurers in the applicable D&O coverage tower whose limits would be partially impaired by the pending settlement, has reserved the right to deny coverage and, despite repeated requests, has thus far failed to take a position on whether it would fund its share of the pending settlement.

6.     National Union's clearly expressed refusal to honor its contractual obligations, and its belated assertion of an extratextual coverage defense and of certain defense cost denials, have injured and continue to injure Duke.  So too has Ironshore's refusal to acknowledge coverage or to commit to funding its share of the pending settlement.  In this coverage action, Duke seeks declaratory relief against National Union and Ironshore to clarify the parties' respective rights and obligations, as well as compensatory damages against National Union resulting from its breach of contract and its statutorily proscribed wrongful conduct.

**THE PARTIES**

7.     Plaintiff Duke is a North Carolina not-for-profit corporation with its principal place of business in Durham, North Carolina.

8.     Defendant National Union is a Pennsylvania corporation with its principal place of business in New York.

9.     Defendant Ironshore is an Arizona corporation with its principal place of business in Massachusetts.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the claims asserted in this Complaint pursuant to N.C.G.S. §§ 7A-240 and 7A-243, as the amount in controversy exceeds $25,000.

11.     Certain claims asserted in this Complaint arise under the Declaratory Judgment Act, N.C.G.S. §§ 1-253 and 1-254, et seq.  This Court may declare the rights and other legal relations of the parties under the Declaratory Judgment Act, as this is a case of actual and justiciable controversy within the Court's jurisdiction.

12.     This Court has personal jurisdiction over the Insurers under North Carolina's long-arm statute, N.C.G.S. § 1-75.4, the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, and N.C.G.S. § 58-16-30.  Each of the Insurers is licensed as an insurer to transact business in North Carolina and has purposefully availed itself of the privilege of transacting business in this state with respect to the matters alleged in this Complaint.  The relevant liability insurance contracts in this dispute were delivered in North Carolina, were sold to a policyholder incorporated and headquartered in this state, and include or follow form to endorsements conforming the contracts to North Carolina regulatory and legal requirements.

13.     Venue is proper in this Court pursuant to N.C.G.S. § 1-80 because Duke is a resident of North Carolina and each Insurer regularly engages in carrying on business in Wake County, including without limitation by registering as an insurer with the North Carolina Department of Insurance in Raleigh, North Carolina.  On information and belief, National Union and Ironshore have also engaged in business in Wake County through advertising in the county; selling insurance policies to residents of the county; covering persons, entities, risks, and losses that are located in or arise in the county; and/or litigating coverage disputes in the courts of this county.

4

# FACTUAL ALLEGATIONS

**A. Duke's 2019 D&O Liability Insurance Coverage Program**

14.     To guard against serious financial loss, Duke purchased a D&O liability insurance program, with multiple layers that provide coverage for antitrust claims, for the policy period January 1, 2019 to January 1, 2020.  The policies in this program provide "claims-made" coverage for D&O liability risks and are designed to provide both defense and indemnity coverage for such claims first made or deemed made against Duke during the policy period.

15.     National Union sold Duke the primary-layer policy in the 2019 program (the "National Union Policy").  Specifically, that policy was issued by National Union Fire Insurance Company of Pittsburgh, Pa., to Duke University as the named insured, for the above-noted policy period of January 1, 2019 to January 1, 2020, under Policy No. 06-582-97-25.  That policy provides Duke with an applicable limit of $10 million, subject to a $2.5 million antitrust claim retention to be borne by Duke (and a $1 million retention that applies to all other claims).

16.     An insurance company not named as a defendant herein ("Excess Insurer I") sold Duke its first-layer excess policy (the "Excess Layer I Policy"), which provides coverage excess of $10 million in underlying limits.  Excess Insurer I has not been named as a defendant herein because Duke and Excess Insurer I have reached a confidential resolution of any differences between themselves regarding the Antitrust Action.  The identity of Excess Insurer I is known to both National Union and Ironshore.

17.     Ironshore sold Duke its second-layer excess policy (the "Ironshore Policy," and together with the National Union Policy, the "Policies").  Specifically, that policy was issued by Ironshore Specialty Insurance Company, to Duke University as the named insured, for the above-noted policy period of January 1, 2019 to January 1, 2020, under Policy No. 003388501. The Ironshore Policy provides additional coverage limits excess of the dollar amounts of the

5

stated limits of the underlying National Union and Excess Layer I Policies.

18.     The Excess Layer I Policy and the Ironshore Policy both "follow form" to the National Union Policy for purposes of coverage for antitrust claims, meaning that they all afford coverage on the same terms as the National Union Policy unless and to the extent that the subject excess policy specifically provides otherwise.

19.     The National Union Policy's D&O Coverage Section insures "Loss" by Duke arising from a "Claim" reported and deemed made against Duke during the 2019 policy period for any actual or alleged "Wrongful Act."

20.     "Loss" is defined in the National Union Policy to include "damages, judgments, settlements, pre- and post-judgment interest, [and] Defense Costs" incurred by Duke.

21.     "Claim" is defined in the National Union Policy to include (i) "a written demand" against Duke "for monetary, non-monetary or injunctive relief," or (ii) a "civil, criminal, regulatory or administrative proceeding for monetary, non-monetary or injunctive relief which is commenced by ... service of a complaint or similar pleading."

22.     "Wrongful Act" is defined in the National Union Policy to include a "violation of the Sherman Antitrust Act" or other antitrust laws.

23.     Additionally, the National Union Policy, at Endorsement No. 11 to the policy's D&O Coverage Section, includes a specific grant of coverage for "Antitrust Claims." Endorsement No. 11 states that the "coverage provided by this endorsement" responds to an "Antitrust Claim," which is expressly defined to include "any Claim" alleging, among other things, "any violation of the Sherman Antitrust Act" or other antitrust laws, as well as "price fixing." Antitrust Claims are subject to a $2.5 million antitrust retention (2.5 times greater than that of all other D&O claims), which National Union has consistently invoked and benefitted

from in its dealings with Duke.

24.     The National Union Policy includes a "relation-back" clause that provides that if, during the 2019 policy period, Duke provides notice of circumstances that may reasonably be expected to give rise to a Claim, then "any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or is a Related Wrongful Act to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given."

25.     All premiums due under Duke's 2019 D&O liability insurance program have been paid.  Further, Duke has complied with, substantially complied with, or has been excused from compliance with, and/or National Union and Ironshore have waived or are estopped from enforcing, any applicable conditions precedent to coverage under the Policies.

**B.  The Underlying Antitrust Action**

26.     On January 9, 2022, a group of former and current students filed a complaint, which has since been twice amended, for themselves and on behalf of a proposed class against Duke and more than a dozen other leading private universities.  *See Henry, et al. v. Brown University, et al.*, No. 22-cv-00125 (N.D. Ill.), n/k/a *Carbone, et al. v. Brown University, et al.*, No. 22-cv-00125 (N.D. Ill.).

27.     The operative complaint (the "Second Amended Complaint") alleges that Duke and the other defendant universities are participating in a purported price-fixing conspiracy.  Duke denies any and all wrongdoing.

28.     The Second Amended Complaint asserts a single cause of action for violation of Section 1 of the Sherman Antitrust Act by way of price fixing.

29.     The Second Amended Complaint alleges, among other things, that the defendant

7

universities artificially reduced and suppressed financial aid awards, thereby damaging members of the putative plaintiff class.

30.     The Second Amended Complaint seeks "actual damages" as provided for by the Sherman Antitrust Action and prays for the amount of such damages "to be trebled as permitted by law."  Additionally, the Second Amended Complaint seeks "pre- and post-judgment interest on any recovery," and "reasonable attorneys' fees and expenses."

31.     The Antitrust Action litigation remains ongoing.  On August 15, 2022, the presiding court denied defendants' motions to dismiss.  *See Carbone v. Brown Univ.*, 621 F. Supp. 3d 878 (N.D. Ill. 2022).  Particularly since that time, the defendants in that litigation have been engaged in extensive and costly discovery, although several defendants have since settled.

32.     Duke has incurred and continues to incur substantial legal defense costs in connection with the litigation of the Antitrust Action and related matters.

33.     On September 28, 2023, Duke reached an agreement in principle to settle and resolve the Antitrust Action.  The agreement in principle, of which the court presiding over the Antitrust Action has been advised and which is currently being documented in a definitive agreement, will be submitted for approval by the court presiding over the Antitrust Action.  The agreement requires Duke to pay a sum certain in settlement without any admission of liability or wrongdoing.  The settlement proceeds will then be distributed to compensate a plaintiff class, the vast majority of which never attended or paid tuition to Duke, and to satisfy an award of attorneys' fees and costs to plaintiffs' counsel.

34.     Duke's settlement payment, plus the defense costs incurred in connection with the Antitrust Action and related matters, would fully exhaust the limits of the National Union Policy and the Excess Layer I Policy and would also partially impair the limits of the Ironshore Policy.

**C. The Policies Cover Duke's Losses from the Antitrust Action**

35.     The National Union Policy, the Excess Layer I Policy, and the Ironshore Policy cover all Loss incurred by Duke arising from the Antitrust Action, including Duke's substantial defense costs and the settlement costs that Duke expects to incur in connection with that litigation and related matters.

36.     The Antitrust Action is a covered "Claim," inasmuch as it is a civil proceeding against Duke for monetary relief (including damages and interest) for alleged wrongful acts, namely, purported violations of the Sherman Antitrust Act.  Further, the Antitrust Action is deemed made during the 2019 policy period because it arises out of circumstances described in a notice of circumstances that Duke submitted to its 2019 D&O insurers during the 2019 policy period.

37.     Additionally, the Antitrust Action is a covered "Antitrust Claim," in that it alleges price fixing and purported violations of the Sherman Antitrust Act and, as noted, is deemed made during the 2019 policy period.

38.     Further, Duke's ongoing defense costs and anticipated settlement costs in connection with the Antitrust Action constitute covered "Loss," a term that expressly includes any defense costs, damages, settlements, and pre- and post-judgment interest.

**D. Duke's Initial Reporting of the Antitrust Action**

39.     On January 9, 2022, the plaintiffs in the Antitrust Action filed their original complaint against Duke and the other defendant universities.  Duke timely reported the Antitrust Action under its 2019 D&O liability policies, including under the National Union Policy and the Ironshore Policy.

40.     On March 24, 2022, National Union responded to Duke with a letter that acknowledged that the Antitrust Action complaint triggers coverage under its 2019 D&O policy,

invoked the policy's higher $2.5 million antitrust retention, and agreed to advance Duke defense costs subject to a complete reservation of rights. National Union's March 24 letter also reserved rights, invoking an exclusion from the definition of "Loss" for matters deemed uninsurable by applicable law, though National Union did not explain the applicable law or the basis for its suggestion that certain claimed Loss may be deemed uninsurable by applicable law.

41.     On March 30, 2022, Duke responded to National Union with a letter that, among other things, asked AIG to explain the basis for its suggestion that certain claimed Loss may be deemed uninsurable by applicable law.

42.     On July 6, 2022, National Union wrote to Duke to reiterate its acknowledgement of potential coverage for the Antitrust Action. Despite Duke's request, National Union's July 6 letter did not specify the basis for its reservation of a potential "uninsurability" defense to coverage, except to note that National Union had not yet assessed whether a potential settlement or adverse judgment, if any, against Duke in the Antitrust Action would be deemed uninsurable under "applicable law."

43.     On August 19, 2022, Duke wrote back to National Union by, among other things, reiterating its request that National Union explain the applicable law that it believed may support its "uninsurability" reservation.

44.     On May 1, 2023, National Union wrote to Duke and agreed to treat certain investigations related to the Antitrust Action as "covered," subject to the same $2.5 million retention applicable to the Antitrust Action. National Union's May 1 email featured no reservations or suggestion that it would deem loss related to those investigations (which pertain to largely the same subject matter of the Antitrust Action) as uninsurable.

45.     On September 28, 2023, Ironshore wrote to Duke reserving rights and citing a

potential "uninsurability" defense, but not denying coverage. To date, Ironshore has failed to acknowledge coverage or agree to contribute its share of the pending settlement.

**E. Duke Cooperates With Its Insurers In Connection With The Antitrust Action**

46.     Duke has closely cooperated with its 2019 D&O insurers in connection with the defense and litigation of the Antitrust Action.

47.     Over the past year and subject to a confidentiality agreement, Duke has corresponded at length with its 2019 D&O insurers regarding the Antitrust Action, provided them with extensive disclosures and updates, and proposed and held several briefings with those insurers both individually and collectively.

48.     On May 8, 2023, Duke requested insurer consent to make a sum certain settlement offer. That same day, National Union responded to Duke's communication in the affirmative, without any reservation or suggestion that it might deem such Antitrust Action-related settlement costs uninsurable or might otherwise resist indemnifying such costs.

49.     Since the motion to dismiss the Antitrust Action was denied in August 2022, and up until August 29, 2023, National Union never told Duke that it would categorically treat any settlement of the Antitrust Action as uninsurable. Nor did any of Duke's other 2019 D&O insurers, including Ironshore, assert that defense during that timeframe.

**F. National Union Breaches Its Insurance Contract and Ironshore Refuses to Acknowledge Coverage Under Its Contract**

50.     On August 29, 2023, National Union—aware that Duke would be re-engaging in settlement talks with the Antitrust Action plaintiffs—sent Duke a letter asserting that any settlement (as opposed to defense) costs that may be incurred in the Antitrust Action would be "restitution and/or disgorgement" and would be deemed "uninsurable" by law. Of note, National Union's letter relied on underlying allegations that had been pled in the Antitrust Action more

11

than a year and a half earlier (in January 2022), on inapposite (and largely out-of-state) case law pre-dating the Antitrust Action by many years, and on the underlying plaintiffs' proposed plan of allocation of settlement costs to be paid by a co-defendant of Duke in the action.

51.    On September 1, 2023, Duke sent National Union a letter requesting reconsideration of its coverage denial, which flouted its policy's express antitrust coverage grant.

52.    Throughout September 2023, with full knowledge by National Union and Duke's other insurers, Duke and counsel for plaintiffs in the Antitrust Action were engaged in settlement negotiations.  On September 27, 2023, at 2:00 p.m. EST, Duke and its defense counsel held a confidential briefing call with National Union and Duke's other insurers to discuss a settlement meeting scheduled for the following day with plaintiffs' counsel in the Antitrust Action.  At 2:03 p.m. EST, just as that briefing call was getting underway, National Union transmitted by email to Duke a letter stating that "the potential settlement that Duke is negotiating to resolve" the Antitrust Action is "not insurable" based on purported "public policy grounds."

53.    On September 28, 2023, after a full day of negotiations, Duke reached an agreement in principle to settle the Antitrust Action, and in the process sought National Union's consent to settle and to make individual settlement offers.  Although National Union (as well as Ironshore and Duke's other insurers) agreed not to assert lack of consent to settlement as a defense to coverage, National Union has continued to incorrectly assert that any costs paid under any such settlement would be "uninsurable."

54.    National Union's uninsurability defense, as to which it bears the burden of proof, is untenable for several reasons.  While not an exhaustive list and without intending to assume any burden of proof with respect to that defense, Duke notes that, among other flaws, the uninsurability defense cannot be squared with the National Union Policy's express antitrust

coverage grant, the absence of any policy exclusions for restitution or disgorgement, the underlying complaint's repeated request for antitrust *damages*, the fact that a lump-sum settlement payment with no admission of wrongdoing is not restitution or disgorgement, the absence of any applicable law rendering a settlement of the Antitrust Action "uninsurable," and the public policy favoring enforcement of contracts.

55.     National Union has breached its obligations under the National Union Policy by wrongfully denying its coverage obligations for any settlement and by clearly evincing an intention to refuse performance of its indemnity obligations with respect to the potential settlement costs that Duke expects to incur in connection with the Antitrust Action.

56.     Additionally, National Union has breached its obligations under the National Union Policy by failing to fully, promptly, and adequately reimburse Duke for defense costs owed.

57.     Among other things, National Union, in early 2022, having required Duke to change its lead defense counsel firm, assured Duke that defense costs billed by the original firm through at least March 2022 would still be credited against the applicable antitrust retention.  In reliance on that assurance, and while disputing National Union's position, Duke complied with National Union's demand to change defense counsel.  Yet in October 2023, National Union announced, without explanation or acknowledgment of its change in position, that it would *not* credit amounts billed by original defense counsel.  Duke subsequently contested that change in position, but to date National Union still has not made payments in accord with its original commitment.

58.     Additionally, National Union has applied excessive discounts to defense cost reimbursements without adequate justification.  Further, National Union has failed to promptly

review itemized defense cost billing and provide reimbursement for defense costs, often delaying review and reimbursement for months.

59.    National Union's breach and/or anticipatory breach have deprived Duke of the insurance protection it bargained for and reasonably expected, and have forced Duke to defend against and litigate the Antitrust Action without any assurance of indemnity or of complete and timely defense cost reimbursement.

60.    The amount of the pending settlement, combined with defense costs incurred and to be incurred, will fully exhaust the limits of the National Union policy and of the Excess Layer I Policy and will partially impair the limits of the Ironshore Policy in Duke's 2019 D&O insurance program.  Although Ironshore, the second-layer excess insurer, has not denied coverage, it has for two months failed to acknowledge coverage or agree to contribute its share of the pending settlement.  Instead, Ironshore has reserved the right to deny coverage based on the aforementioned (and invalid) "uninsurability" defense.  Accordingly, a genuine controversy exists as to Ironshore's duty to indemnify under the Ironshore Policy.

**CAUSES OF ACTION**

**COUNT I -**
**DECLARATORY RELIEF**
**(Against National Union and Ironshore)**

61.    Duke repeats and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows.

62.    Duke seeks a declaration of the parties' rights and duties under the Policies in accordance with the Declaratory Judgment Act, N.C.G.S. §§ 1-253 and 1-254, et seq.

63.    Each Insurer agreed in its insurance contract to provide coverage for "Loss" that Duke becomes legally obligated to pay by reason of a claim made or deemed to have been made

14

against Duke during the 2019 policy period, including without limitation defense costs and any settlement amounts, damages, or adverse judgments.

64.    The Antitrust Action is a covered "Claim" and is also a covered "Antitrust Claim."

65.    Duke has incurred and will continue to incur substantial defense costs in connection with its defense of the Antitrust Action and the related investigations. Such defense costs constitute covered "Loss."

66.    Duke will also incur substantial costs to fund a settlement that it reached in principle in the Antitrust Action on September 28, 2023. Such costs constitute additional covered "Loss."

67.    The Policies contain no exclusions that would apply to preclude or limit coverage for Duke's "Loss" in connection with the Antitrust Action, as to which in any event the Insurers would bear the burden of proof.

68.    Duke has complied with, substantially complied with, or has been excused from compliance with, and/or National Union and Ironshore have waived or are estopped from enforcing, all applicable conditions precedent to coverage under the Policies.

69.    National Union is thus contractually obligated under its insurance policy to pay on behalf of Duke the full amount of its "Loss" in excess of the already-exhausted $2.5 million antitrust retention.

70.    Ironshore is likewise contractually obligated under its insurance policy to pay on behalf of Duke the full amount of its "Loss" within its excess coverage layer.

71.    Despite the foregoing, and despite collecting premiums on an insurance contract that expressly insures against antitrust claims, National Union has denied coverage for any

settlement and has also failed to promptly and fully reimburse Duke for its antitrust-related defense costs.

72.     Likewise, Ironshore, despite collecting premiums on an insurance contract that follows form to a primary policy that specifically insures against antitrust claims, has refused to acknowledge its coverage obligations or commit to funding any portion of the pending settlement.

73.     An actual and justiciable controversy therefore exists between Duke and the Insurers concerning the latter's contractual duty to indemnify Duke for potential liability costs that it may incur in resolving the Antitrust Action.

74.     Additionally, National Union has failed to fully and timely compensate Duke for its defense costs incurred in connection with the Antitrust Action.

75.     Thus an actual and justiciable controversy also exists between Duke and National Union concerning National Union's contractual duty to fund the costs of defending the Antitrust Action.

76.     The foregoing controversies are of sufficient immediacy to justify the issuance of declaratory relief.  Further, the issuance of declaratory relief by this Court addressing the obligations of the Insurers under their insurance policies will terminate some or all of the controversy between the parties.

77.     Duke accordingly seeks declarations from the Court that the Policies cover defense and settlement costs that Duke incurs in connection with the Antitrust Action, subject only to any underlying retention or limit shown by the Insurers unambiguously to apply.  Duke further seeks any other appropriate declaration so as to settle the legal relationship, rights, and obligations between Duke and the Insurers.  Duke also reserves the right to seek supplemental

relief based on a declaratory judgment or decree, including but not limited to damages, under N.C.G.S. § 1-259.

## COUNT II -
## BREACH (AND/OR ANTICIPATORY BREACH) OF CONTRACT
### (Against National Union)

78.     Duke repeats and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows.

79.     The National Union Policy is a valid and enforceable contract of insurance, binding on the parties thereto.

80.     Duke has paid, and National Union has received, all premiums due under the National Union Policy.  Further, Duke has complied with, substantially complied with, or has been excused from compliance with, and/or National Union has waived or is estopped from enforcing, all applicable conditions precedent to coverage under the National Union Policy.

81.     Duke is entitled to coverage under the National Union Policy for Duke's Loss arising from the Antitrust Action, including defense and settlement costs that Duke incurs and is continuing to incur in connection with that action.

82.     Since August 29, 2023, National Union has repeatedly denied any obligation to fund the pending settlement of the Antitrust Action.

83.     National Union has materially breached and/or anticipatorily breached its obligations under the National Union Policy by wrongfully denying its coverage obligations and by clearly evincing an intention to refuse performance of its indemnity obligations with respect to any settlement costs that Duke incurs in connection with the Antitrust Action.

84.     Duke has treated National Union's clear refusals to fund the Antitrust Action settlement for what they are—namely, a refusal and repudiation of indemnity coverage.

85.    Additionally, National Union has failed to fully and timely compensate Duke for its defense costs incurred in connection with the Antitrust Action.

86.    Among other things, National Union, in October 2023, reneged on a prior written commitment that it had made to credit against the applicable retention fees Duke had incurred from one of the law firms previously defending it in the Antitrust Action, and although National Union is purportedly reconsidering its latest position at Duke's urging, National Union still has not credited or paid amounts due. Additionally, National Union has applied excessive discounts to defense cost reimbursements without adequate justification. Further, National Union has failed to promptly review defense cost billing and issue defense cost reimbursements.

87.    National Union's conduct with respect to defense costs, which is ongoing, constitutes a further breach of contract.

88.    As a direct and proximate result of National Union's breach and/or anticipated breach of the National Union Policy, Duke has suffered injury. Among other things, Duke has been deprived of, and continues to be deprived of, the benefits of the insurance coverage for which it paid all applicable premiums, and has been forced to defend against and litigate the Antitrust Action without any assurance of indemnity or of complete and timely defense cost reimbursement. More still, Duke has committed to a settlement of the Antitrust Action for which National Union has disclaimed any coverage obligation.

89.    Also, as a direct and proximate result of National Union's breach and/or anticipatory breach of the National Union Policy, Duke has incurred and will continue to incur reasonable attorneys' fees and costs to prosecute this coverage action.

90.    In light of National Union's breach and/or anticipatory breach of the National Union Policy, and Duke's ensuing injuries, Duke is entitled to money damages, including

interest according to law.

91.     Duke's losses as a result of the National Union's breach and/or anticipatory breach of the National Union Policy are continuing, and Duke reserves the right to seek the full and exact amount of its damages at the time of trial.

## COUNT III –
## UNFAIR AND DECEPTIVE TRADE PRACTICES
### (Against National Union)

92.     Duke repeats and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows.

93.     Pursuant to N.C.G.S. § 75-1.1, National Union has a statutory duty to avoid unfair and deceptive trade practices.

94.     National Union has breached and is continuing to breach its statutory duty under N.C.G.S. § 75-1.1, including by engaging in unfair claim settlement practices proscribed by N.C.G.S. § 58-63-15(11) and by otherwise breaching its contract under egregious and aggravating circumstances.

95.     For instance, National Union failed to promptly provide a reasonable explanation for what culminated in a denial of coverage.  *See* N.C.G.S. § 58-63-15(11)(n).  Instead, National Union first acknowledged in March 2022 that the Antitrust Action complaint triggered coverage, and while it reserved rights under a purported "uninsurability" defense, National Union failed—for more than a year—to answer Duke's repeated requests for an explanation of the actual bases for its reservation.  More still, during that time, National Union responded in the affirmative and without qualification to Duke's initial request for consent in connection with a proposed settlement offer in the Antitrust Action.  Then in late August 2023, after it became clear that any settlement would likely fully exhaust National Union's limits, National Union reversed course,

asserting that potential liability costs in connection with the Antitrust Action would be "uninsurable." National Union's uninsurability defense, aside from lacking any basis in the policy text and directly conflicting with an express antitrust coverage grant, was belatedly asserted and/or explained and contravenes National Union's prior course of conduct.

96.     National Union's failure to promptly and adequately communicate with Duke regarding its uninsurability defense also reflects a failure to acknowledge and act reasonably promptly upon communications with Duke regarding insurance claims, *see* N.C.G.S. § 58-63-15(11)(b), and a failure to implement reasonable standards for promptly investigating claims, *see* N.C.G.S. § 58-63-15(11)(c).

97.     Additionally, National Union required that Duke change its lead defense counsel firm in early 2022, assuring Duke that National Union would still credit defense costs billed by the original firm through at least March 2022 against the applicable antitrust retention. Although Duke disagreed with National Union's demand, it nevertheless complied with it, in reliance on National Union's above-stated assurance. Yet in October 2023, National Union announced that it would not credit the aforementioned costs, without acknowledging, much less explaining, its belated change of course. By inexplicably reneging on a prior coverage commitment a year and a half after the fact, National Union failed to promptly provide a reasonable explanation for a denial of defense cost coverage. *See* N.C.G.S. § 58-63-15(11)(n); *see also id*. at (b) and (c). And while National Union is purportedly reconsidering its latest position at Duke's urging, it has not promptly remedied the situation nor explained its reversal of course. National Union has also failed to promptly review and failed to promptly explain and address other defense cost sums.

98.     The foregoing wrongful acts by National Union, though not an exhaustive account of National Union's wrongful acts and statutory violations, constitute egregious or aggravating

circumstances accompanying National Union's breach of contract.

99.     National Union's wrongful acts arise out of the insurance relationship between Duke and National Union, and are thus acts in or affecting commerce.

100.     National Union's wrongful acts proximately caused injury to Duke, including without limitation by unreasonably depriving Duke of the coverage owed it under the National Union Policy and by forcing Duke to defend against and litigate the Antitrust Action without any assurance of indemnity or of a prompt and complete defense cost reimbursement.

101.     Pursuant to N.C.G.S. § 75–16, National Union is liable for three times the amount of the losses it proximately causes Duke through its statutory violations.  Here, National Union's UDTPA violations arise from a breach of the insurance contract plus aggravating factors, including but not limited to those listed above.  Put otherwise, there is but one continuous transaction underlying National Union's breach of contract and UDTPA violations. Accordingly, National Union is liable to Duke for trebled contract damages.

102.     National Union willfully engaged in the foregoing acts and unwarrantedly refused to fully resolve the matter underlying this civil lawsuit.  Duke is therefore entitled, under N.C.G.S. § 75–16.1, to recover from National Union an award of attorneys' fees incurred and to be incurred in prosecuting this lawsuit.

103.     Duke's damages as a result of National Union's breach of its statutory duty to avoid unfair and deceptive trade practices are continuing, and Duke reserves the right to seek the full and exact amount of its damages at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Duke prays for relief as follows:

1.     On Count I, a judgment declaring that the Policies cover defense and settlement

costs that Duke incurs in connection with the Antitrust Action, subject only to any underlying retention or limit shown by the Insurers unambiguously to apply. Duke further seeks any other appropriate declaration so as to settle the legal relationship, rights, and obligations between Duke and the Insurers. Duke also reserves the right to seek supplemental relief based on a declaratory judgment or decree, including but not limited to damages, under N.C.G.S. § 1-259.

2.      On each of Counts II and III, a money judgment against National Union in an amount exceeding $25,000, the exact amount to be determined at trial.

3.      On Count III, treble damages under N.C.G.S. § 75–16 and an award of attorneys' fees under N.C.G.S. § 75–16.1.

4.      On all claims for relief, pre-judgment and post-judgment interest at the maximum legal rate.

5.      On all claims for relief, attorneys' fees and costs of suit.

6.      On all claims for relief, such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Duke requests a trial by jury for all issues so triable.

**RESPECTFULLY SUBMITTED.**

Dated:  December 1, 2023

/s/ Richard C. Worf, Jr.          
Richard C. Worf, Jr.
N.C. State Bar No. 37143
ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
(704) 377-8135
rworf@robinsonbradshaw.com

Mitchell F. Dolin (*pro hac vice* forthcoming)
Jad H. Khazem (*pro hac vice* forthcoming)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-6000
mdolin@cov.com
jkhazem@cov.com

*Attorneys for Plaintiff Duke University*